UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JENNINGS,

    Plaintiff,

v.

GENESEE COUNTY DEPUTIES
PATRICK FULLER, LT. ROBERT
NUCKOLLS, DAVID KENAMER,
SGT. KYLE GUEST, MARK WING,
and JASON WHITE,

    Defendants.
_____/

Case No. 13-13308
HON. AVERN COHN

**MEMORANDUM AND ORDER**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 39)**

### I. INTRODUCTION

This is a 42 U.S.C. § 1983 excessive force case. Plaintiff William Jennings (Jennings) is suing Genesee County Officers Patrick Fuller, David Kenamer, Kyle Guest, Mark Wing, and Lieutenant Robert Nuckolls (collectively, Defendants), claiming excessive use of force during an altercation following his arrest on September 18, 2010. In a one-count complaint (Doc. 1), Jennings claims unreasonable seizure and excessive use of force in violation of the Fourth and Fourteenth Amendments to the United States Constitution; he demands that a jury decide his claim.

Now before the Court is Defendants' Motion for Summary Judgment (Doc. 39). For the reasons that follow, this motion is DENIED.

### II BACKGROUND

1

**A.**

Because the Court addresses Jennings's claims in response to Defendants' Motion for Summary Judgment, the Court must view the evidence in the light most favorable to Jennings.[1]

**B.**

On September 18, 2010, Jennings was arrested for operating an automobile while intoxicated. He was arrested by Flint Township Police Sergeant Frank Hartner and was admittedly drunk at the time of his arrest. Earlier in the evening, Hartner had been investigating the source of six gunshots fired in the area of Jennings's residence. During the investigation, one of Jennings's neighbors said that he had been in an altercation with Jennings at a bar, and that Jennings had fired the gunshots to threaten him. The neighbor also said that Jennings had been smoking crack cocaine.

Hartner encountered Jennings after Jennings's vehicle was stopped by another Flint Township police officer. Hartner observed that Jennings's eyes were watery, bloodshot, and droopy, and that he could smell a strong odor of intoxicants coming from his person. Hartner gave Jennings a field sobriety test, which revealed possible intoxication by drugs. Jennings also consented to a breathalyzer test, which showed a blood alcohol content of 0.120. (Incident Report, Doc. 40, Ex. D at 3-4). Jennings states that although he was intoxicated by alcohol, he denies being intoxicated by drugs. This was confirmed by blood test results taken three hours after the altercation

---

[1] Although Defendants submitted a Statement of Material Facts (Doc. 40) and Jennings filed a Response (Doc. 42), the parties have not provided a joint statement as required by this Courts motion practice guidelines. The facts described below are as set forth in these papers, and as supported by the parties' briefs and the video described in Part II.C, *infra*.

with police, which were negative for the use of any drugs. (Lab Test Results, Doc. 43, Ex. 12 at 1-2). Further, although Defendants claim that Jennings was "uncooperative" during the encounter with Hartner, Hartner's incident report contains no indication that Jennings was uncooperative or resisted arrest in any way.[2] (Incident Report, Doc. 40, Ex. D) Additionally, Hartner has stated that although Jennings was intoxicated, he was compliant as he was taken to the jail. (Hartner Dep., Doc. 43, Ex. 2 at 28-30)

## C.

Following the arrest, Hartner took Jennings to the Genesee County jail and turned him over for booking. From this point forward, video captured approximately three hours of activity.[3] What follows is a fair appraisal of what the video shows.

The video begins by showing Jennings, approximately 5'8" and 140 pounds, being lead into the booking room with no sign of aggression or resistance to the officers' commands—contrary to Defendants' statements. The video then shows Fuller, approximately 6'4" and 290 pounds, physically searching Jennings, while Jennings was standing and leaning over a metal bench with his hands against a wall. At one point, Jennings briefly dropped his left arm and Fuller reacted by grabbing the back of his shirt and pushing him against the wall. Jennings turned his head and shoulders approximately 45 degrees to the right toward Fuller. Fuller and Kenamer immediately took Jennings down, pinning him the metal bench and then to the floor.

---

[2] Hartner's report notes that Jennings "became combative and disorderly" at the jail during his intake; however, this was *after* Jennings's arrest and after being turned over to Genesee County custody. (See Incident Report, Doc. 40, Ex. D at 4)

[3] The video evidence consists of five separate videos: two from the booking area, two from a hallway, and one from a confinement cell. The totality of the video evidence extends over three hours, from approximately 5:06 a.m. to 8:09 a.m.

From there, the video shows that Jennings continued to resist for approximately nine minutes, until he was ultimately strapped to a restraint bed and held in a confinement cell. During the extended altercation, Jennings's voice can be heard as several officers attempted to subdue him. The video show that at one point, while Jennings was pinned to the floor, an officer had his hand placed over Jennings's face. Later, another officer can be seen placing his knee on Jennings's head and pinning it against the floor. Eventually, the video shows the officers using what appears to be pepper spray and a taser to subdue him. Once Jennings was subdued, the officers placed a spit hood over his face and strapped face down to a restraint bed. He remained strapped to the bed for over two-and-a-half hours and when he was released, there were approximately six officers in the cell with him. There is no indication that Jennings received any medical attention during the time he was on the restraint bed or that the pepper spray was washed off his face.

### III. STANDARD OF REVIEW

The summary judgment standard of review under Fed. R. Civ. P. 56 is well known and not repeated here. Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

### IV. ANALYSIS

Defendants proffer three arguments in favor of summary judgment: (1) that Defendants' actions were not unreasonable under a Fourth Amendment analysis, (2) that Defendants are entitled to qualified immunity, and (3) that collateral estoppel bars

Jennings's claims. Each argument is addressed in turn.

## A. Fourth Amendment "Reasonableness"[4]

**1.**

"It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants." *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (citing *Salehphour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir.1998)). In addition, "[t]hose present for an unconstitutional seizure can also be held liable for failure to protect." *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006) (citing *Smith v. Heath*, 691 F.2d 220, 225 (6th Cir.1982)) Here, Jennings's complaint alleges that each of the named officers was not only present, but actively took part in his arrest. Indeed, Defendants make no attempt to refute that any individual officer did not take part in the activities shown in the video. Therefore, each of the Defendant officers is properly named in Jennings's excessive force claim.

**2.**

---

[4] Although Jennings alleges violations under both the Fourth and Fourteenth Amendments of the U.S. Constitution, Defendants argue only that their actions were not unreasonable under the Fourth Amendment.

The Fourth Amendment, which applies reasonableness standard, applies "[i[f the plaintiff was a *free person* at the time of the incident and the use of force occurred in the course of an arrest or other seizure." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (emphasis added). By contrast, Fourteenth Amendment due process, which "protects citizens against conduct by law enforcement officers that 'shocks the conscience,'" applies to *pretrial detainees*. *United States v. Budd*, 496 F.3d 517, 529 (6th Cir. 2007). The Sixth Circuit has held that the Fourth Amendment, rather than Fourteenth Amendment due process, protects detainees arrested without a warrant between the time of arrest and the probable cause hearing. *Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010); *see also Bell v. Wolfish*, 441 U.S. 520, 582-83 (1979) (suggesting in dicta that that individuals who have not had a probable-cause hearing are not yet pretrial detainees for constitutional purposes).

Here, because Jennings had not yet received his probable cause hearing, his claims are properly analyzed under the Fourth Amendment reasonableness standard.

When analyzing excessive force claims, the Fourth Amendment's "objective reasonableness" standard applies from the time of arrest until the completion of a probable cause hearing. *See Aldini v. Johnson*, 609 F.3d 858, 865-66 (6th Cir. 2010). The Sixth Circuit has explained:

> [The] standard requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure. This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. The officer's subjective intentions are irrelevant to the Fourth Amendment inquiry.

*Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citations omitted). This standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. However, the Sixth Circuit applies a segmented analysis, analyzing each use of force to determine whether it is constitutionally justified. Thus, a subsequent use of force cannot be justified by an earlier, unrelated act of resistance. *Claybrook v. Birchwell*, 274 F.3d 1098, 1103-04 (6th Cir. 2001).

**3.**

Under the standard described above, and given the number of disputed material facts that can he argued from a viewing of the video, the actions of the Genesee County police officers cannot be said to be indisputably objectively reasonable.

6

To begin, a fair view of the video can be said to directly contradict many of Defendants' assertions. To justify the use of force as shown in the video, Defendants say that during the booking process, Jennings was non-compliant, combative, and disorderly, and that he failed to follow verbal commands and "approached the officers with an aggressive posture." (See Defendants' Brief, Doc. 39 at 14) The video can be said to dispute this. In the video, Jennings displays no sign of aggression or resistance during booking. At most, Jennings's actions that Defendants say started the altercation—the "aggressive" turn toward Fuller—appeared to be a reaction to Fuller pushing him forcefully against the wall. Looking at the video, it can be argued that the decision by Fuller and Kenamer to take Jennings down appears overhanded. The video gives support to Jennings's argument there was no evident threat to Fuller's safety, based on the fact that (1) Fuller and was much larger than Jennings; (2) Jennings had to this point been calm and compliant, and (3) Jennings had yielded and was leaning against the wall with his back toward Fuller.

Further, the video can be said to support many of Jennings's statements. The video shows an officer pinning Jennings's head to the floor with his knee, another officer placing his hand over Jennings's face and mouth, and other officers on top of Jennings's torso and legs. Jennings says that he was screaming in pain and that, after being sprayed with pepper spray, he began shouting, "I can't breathe," and "I have emphysema." Although Jennings was clearly resisting, the video can be said to support his assertion that he was resisting because he was struggling to breathe and was in severe pain.

Finally, there is no dispute that Jennings was placed face down on a restraint

bed for several hours with pepper spray residue on his face and with no medical care. Jennings says that the officers left him bleeding into the blood-soaked spit hood, which prevented him from breathing and caused him to lose consciousness.[5] Jennings says that his restraint violated several policies of the Genesee County Police Department, namely by: (1) leaving him in restraints for nearly several hours without supervision; (2) allowing him to lie face down in restraints after being subdued; (3) not washing the pepper spray off his face after he was subdued; (4) not having him examined by medical professionals after using pepper spray; and (5) using a taser on him after he had been saturated with combustible pepper spray.[6]

For these reasons, there is a genuine issue as to whether Defendants' use of force was objectively reasonable. Under the standard described above, and given Jennings's testimony, the video, and the large number of factual disputes, it cannot be said that Defendants' conduct was objectively reasonable without contradiction. In sum,

---

[5] Defendants suggest that Jennings has no firsthand recollection of these events, but rather constructed his version of events after watching the video. Defendants rely on Jennings's deposition testimony that he had "no recollection of whatever happened to [him]" after Defendants used pepper spray. However, Jennings's says that he only lost conscious after he was sprayed with pepper spray *and placed face down in the restraint bed*. (Jennings's Response to Defendants' Statement of Facts, Doc. 42 at 10) Moreover, it is not clear from the parties' statements or the video when the officers first used pepper spray. Taking these facts in light most favorable to Jennings, is cannot be said that Jennings had no firsthand recollection of these events. This is a question for the factfinder.

[6] In Defendants' Reply Brief, they argue that Genesee County's internal policies are not admissible and irrelevant, citing *Hocker v. Pikeville City Police Dep't*, 738 F.3d 150, 156 (6th Cir. 2013) However, that case merely states that an alleged violation of standard training policies "does not by itself answer the liability question." Although not conclusive on the question of whether the use of force is objectively reasonable, it may be highly relevant. Further, *Hocker* is distinguishable on the facts. There, the use of force that violated standard training policy resulted in the plaintiff being shot nine times while he was *actively* evading arrest. Here, Jennings was left strapped to the restraint bed for several hours *after* he had already been subdued.

Defendants are not entitled to summary judgment. A jury must resolve what occurred.

**4.**

In Jennings's response he argues that, given the strength of the video, he is entitled to summary judgment. Although the video may support many of Jennings's factual claims, there remains an unresolved question whether Defendants' use of force was objectively reasonable. Summary judgment in Jennings's favor is therefore inappropriate as well.

**B. Qualified Immunity**

**1.**

The doctrine of qualified immunity shields governmental officials performing discretionary functions "for liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citation omitted). As the Supreme Court has explained, "[t]his accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation omitted).

**2.**

As noted, given the disputed questions of material fact, it cannot be said that

9

Defendants' actions were objectively reasonable. Similarly, it cannot be said that any such error was reasonable. Here, there is evidence that Defendants' conduct clearly violated not one, but several of Genesee County's own policies regarding the use of force in effectuating an arrest. In addition, presuming that the degree of force used was unreasonable under a Fourth Amendment analysis, it cannot be said, as a matter of law, that any such error was a reasonable one. Given the policies and procedures in place to protect the physical safety of an arrestee, the evidence is such that it cannot be said that Defendants' actions were lawful. Defendants are therefore not entitled to qualified immunity.

### C. Collateral Estoppel

Finally, Defendants state that because a state court found probable cause to bind Jennings over on felony assault charges for biting Fuller,[7] and because Jennings pled guilty to operating while intoxicated, his claims of illegal arrest, detention, and prosecution are collaterally estopped. The argument is without merit.

To begin, Jennings's complaint states an excessive use of force claim against individual police officers. He does not claim that his arrest, detention, and prosecution were unlawful or unjustified, but rather that the use of force in detaining him was excessive. Indeed, Hartner, who initially made the arrest, was not named as a defendant.

Here, the fact that Jennings pled guilty to the misdemeanor operating while

---

[7] On December 20, 2011, Jennings was charged with felony assaulting/resisting/ obstructing a police officer in violation of MCL 750.81. (Information, Doc. 43 Ex. 10) On October 11, 2012, the charges were nolle prosequed "in the interest of justice" shortly after Jennings's lawyer provided the assistant county prosecutor with a copy of the video. (State Court Transcript, Doc. 43 Ex. 11)

intoxicated charges has no relevance to his treatment at the Genesee County jail. Further, the fact that the state court found probable cause to charge Jennings with felony assault does not preclude a finding that Defendants' use of force was unreasonable. For *res judicata* and *collateral estoppel* to have a preclusive effect on a particular claim, there must be an "identity of issues" such that a party is "precluded . . . from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Here, the criminal charges against Jennings concern issues that are distinct from and unrelated to Jennings's excessive force claims.

## V. CONCLUSION

For the above reasons, there are numerous questions of material fact and law, rendering summary judgment inappropriate. Defendants' motion for summary judgment has therefore been denied.

SO ORDERED.

<u>s/Avern Cohn</u>
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: July 2, 2015