UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JENNINGS,

    Plaintiff,

vs.                                                                           Case No. 13-13308

GENESEE COUNTY DEPUTIES                    HON. AVERN COHN
FULLER, Lt. ROBERT NUCKOLLS,
DAVID KENAMER, SGT. KYLE
GUEST, MARK WING, and JASON WHITE,

    Defendants.
_____/

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS (Doc. 56)

I. Introduction

This is an excessive force case under 42 U.S.C. § 1983. Plaintiff William Jennings (Jennings) is suing Genesee County police officers Patrick Fuller, David Kenamer, Kyle Guest, Mark Wing, and Lieutenant Robert Nuckolls (collectively, Defendants), claiming excessive use of force during an interaction which occurred in the Genesee County Jail following his arrest on September 18, 2010. In a one-count complaint (Doc. 1), Jennings claims unreasonable seizure and excessive use of force in violation of the Fourth and Fourteenth Amendments to the United States Constitution; he demands that a jury decide his claim. Defendants moved for summary judgment, arguing in part that they are entitled to qualified immunity. On July 2, 2015, the Court denied the motion, finding that there were genuine issues of material fact as to what occurred and therefore it could not be said as a matter of law whether defendants were

entitled to qualified immunity. (Doc. 51). Defendants filed a notice of appeal, contending that the Court erred in denying defendants qualified immunity. (Doc. 53).

Before the Court is defendant's motion to stay proceedings pending resolution of the appeal. For the reasons that follow, the motion will be denied. As will be explained, the appeal based on the record in this case is frivolous.

## II. Legal Standard

In general, a defendant can file an interlocutory appeal of the denial of his motion for summary judgment on qualified immunity grounds. Dickerson v. McClellan, 37 F.3d 251, 252 (6th Cir.1994) (citing Mitchell v. Forsyth, 472 U.S. 511, 522, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ). When such an appeal is taken, the district court is divested of jurisdiction and proceedings are stayed pending a decision by the appellate court. See id.; see also Stewart v. Donges, 915 F.2d 572, 576 (10th Cir.1990); Apostol v. Gallion, 870 F.2d 1335, 1338 (7th Cir.1989) (citing Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) ).

However, as another judge in this circuit explained, a defendant's right to appeal is not absolute:

> A defendant's right to bring such an interlocutory appeal is subject to two limitations, however. First, a defendant cannot stop district court proceedings by simply asserting a frivolous interlocutory appeal. If a defendant's challenge to the denial of his qualified immunity defense is devoid of merit, the district court can declare it as such and move forward with the case. See Behrens v. Peltier, 516 U.S. 299, 310–11, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (citing Yates v. Cleveland, 941 F.2d 444, 448–49 (6th Cir.1991) ).
>
> The purpose underlying the district court's authority to disregard a frivolous interlocutory appeal is manifest. An interlocutory appeal is "subject to abuse." Kennedy v. City of Cleveland, 797 F.2d 297, 300 (6th Cir.1986). A defendant can assert an interlocutory appeal simply to delay a proceeding, causing prejudice to both the plaintiff and the court. To avoid the "deleterious effects of

> unfounded delays," some Circuit Courts[1] have held that the district court retains the authority to certify an appeal as frivolous and "get on with trial." Apostol, 870 F.2d at 1339.
>
> Second, a defendant cannot immediately appeal a district court order denying him summary judgment on qualified immunity grounds if the determination is fact-related. The Supreme Court held in Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), that qualified immunity appeals should be limited to "cases presenting neat abstract issues of law." Id. at 317 (citation omitted). The Sixth Circuit has also noted that denials of summary judgment are only appealable if "the issue on appeal is not what facts the parties may be able to prove, but whether the plaintiff's facts, taken at their best, show a violation of clearly established law." Williams v. Mehra, 186 F.3d 685, 689 (6th Cir. 1999); see also Turner v. Scott, 119 F.3d 425, 428 (6th Cir. 1997). The Sixth Circuit lacks jurisdiction to review a denial of summary judgment that "turns on the existence of a genuine issue of material fact." Skousen v. Brighton High Sch., 305 F.3d 520, 525 (6th Cir. 2002); see also Farm Labor Org. Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 536–37 (6th Cir. 2002).
>
> The Sixth Circuit has made it "clear that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order," where, as here, "that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial." Estate of Carter v. Detroit, 408 F.3d 305, 307 (6th Cir.2005) (citation and quotation marks omitted). This Court's denial of qualified immunity did not "turn on an issue of law," Johnson, 515 U.S. at 309, and is not "an appealable final decision under 28 U.S.C. § 1291," id.

Robinson v. Barrow, 2012 WL 1004758, *1-2 (Mar. 22, 2012, N.D. Ohio) (internal footnote omitted).

### III. Analysis

In denying summary judgment, the Court made clear that it was doing so because of factual disputes in the record. The Court fully explained the factual disputes by carefully evaluating the evidence put forth by the parties, including the video of the

---

[1]As the district court in Robinson noted, the Court of Appeals for the Sixth Circuit has neither explicitly endorsed nor rejected the procedure. See Dickerson, 37 F.3d at 252 (stating that "this court has suggested in the past that a district court may have jurisdiction to certify an interlocutory appeal from the denial of qualified immunity as frivolous," but vacating the district court's dismissal of the defendant's notice of appeal).

event:

> To justify the use of force as shown in the video, Defendants say that during the booking process, Jennings was non-compliant, combative, and disorderly, and that he failed to follow verbal commands and "approached the officers with an aggressive posture." (See Defendants' Brief, Doc. 39 at 14) The video can be said to dispute this. In the video, Jennings displays no sign of aggression or resistance during booking. At most, Jennings's actions that Defendants say started the altercation—the "aggressive" turn toward Fuller—appeared to be a reaction to Fuller pushing him forcefully against the wall. Looking at the video, it can be argued that the decision by Fuller and Kenamer to take Jennings down appears overhanded. The video gives support to Jennings's argument there was no evident threat to Fuller's safety, based on the fact that (1) Fuller and was much larger than Jennings; (2) Jennings had to this point been calm and compliant, and (3) Jennings had yielded and was leaning against the wall with his back toward Fuller.
>
> Further, the video can be said to support many of Jennings's statements. The video shows an officer pinning Jennings's head to the floor with his knee, another officer placing his hand over Jennings's face and mouth, and other officers on top of Jennings's torso and legs. Jennings says that he was screaming in pain and that, after being sprayed with pepper spray, he began shouting, "I can't breathe," and "I have emphysema." Although Jennings was clearly resisting, the video can be said to support his assertion that he was resisting because he was struggling to breathe and was in severe pain.
>
> Finally, there is no dispute that Jennings was placed face down on a restraint bed for several hours with pepper spray residue on his face and with no medical care. Jennings says that the officers left him bleeding into the blood-soaked spit hood, which prevented him from breathing and caused him to lose consciousness. Jennings says that his restraint violated several policies of the Genesee County Police Department, namely by: (1) leaving him in restraints for nearly several hours without supervision; (2) allowing him to lie face down in restraints after being subdued; (3) not washing the pepper spray off his face after he was subdued; (4) not having him examined by medical professionals after using pepper spray; and (5) using a taser on him after he had been saturated with combustible pepper spray.
>
> For these reasons, there is a genuine issue as to whether Defendants' use of force was objectively reasonable. Under the standard described above, and given Jennings's testimony, the video, and the large number of factual disputes, it cannot be said that Defendants' conduct was objectively reasonable without contradiction. In sum, Defendants suggest that Jennings has no firsthand recollection of these events, but rather constructed his version of events after watching the video. Defendants rely on Jennings's deposition testimony that he

4

> had "no recollection of whatever happened to [him]" after Defendants used pepper spray. However, Jennings's says that he only lost conscious after he was sprayed with pepper spray and placed face down in the restraint bed. (Jennings's Response to Defendants' Statement of Facts, Doc. 42 at 10) Moreover, it is not clear from the parties' statements or the video when the officers first used pepper spray.  Taking these facts in light most favorable to Jennings, is cannot be said that Jennings had no firsthand recollection of these events. This is a question for the factfinder.

(Doc. 51 at p. 7-8) (footnotes omitted).

As to qualified immunity, the Court said:

> As noted, given the disputed questions of material fact, it cannot be said that Defendants' actions were objectively reasonable. Similarly, it cannot be said that any such error was reasonable. Here, there is evidence that Defendants' conduct clearly violated not one, but several of Genesee County's own policies regarding the use of force in effectuating an arrest. In addition, presuming that the degree of force used was unreasonable under a Fourth Amendment analysis, it cannot be said, as a matter of law, that any such error was a reasonable one. Given the policies and procedures in place to protect the physical safety of an arrestee, the evidence is such that it cannot be said that Defendants' actions were lawful. Defendants are therefore not entitled to qualified immunity.

(Id. at p. 9-10).

The Court's decision did not turn on a question of law.  Jennings's right to be free from excessive force is clearly established.  However, the Court concluded that the record is sufficiently conflicting such that it cannot be determined whether defendants acted reasonably or violated Jennings constitutional right.  Because factual disputes are the basis for the Court's denial of qualified immunity, there is no reason to grant a stay to permit defendants to pursue an appeal from a non-appealable order.

Defendants, moreover, do not articulate or apply the traditional factors considered in determining whether to stay a case pending appeal.  These factors are: "1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; 2) the likelihood that the moving party will be irreparably harmed absent a stay; 3) the

prospect that others will be harmed if the court grants the stay; and 4) the public interest in granting the stay." Grutter v. Bollinger, 247 F.3d 631, 632 (6th Cir. 2001). The "four factors are not prerequisites but are interconnected considerations that must be balanced together." Coal. to Defend Affirmative Action v. Granholm, 473 F.3d 237, 244 (6th Cir.2006). "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir.1991).

While the Court is not a fortune teller, it firmly believes that defendants will not prevail on the merits of the appeal because the appeal does not present a pure legal issue. Jennings will be harmed by further delay. The public interest favors moving this matter forward to determining defendants' liability. Defendants have also not shown that they will be overwhelmingly and irreparably harmed absent a stay. Thus, on balance, the four factors weigh in favor proceeding to trial.

A final point. The Court is constrained to observe that the ability to seek interlocutory review from the denial of qualified immunity can lead to abuse where an appeal is taken from an order which clearly does not turn on a legal issue. The end result is to delay resolution as to the merits of a case, which is inconsistent with the fair administration of justice.

IV. Conclusion

For the reasons stated above, defendants' motion to stay is DENIED.

SO ORDERED.

                                        s/Avern Cohn
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE

Dated: September 4, 2015
      Detroit, Michigan