```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION
```

**WILLIAM JENNINGS,**

               Plaintiff,             **HONORABLE AVERN COHN**

    v.

                              **No. 13-13308**

**PATRICK FULLER, et al.,**

               Defendants.

_____/


**HEARING ON MOTIONS IN LIMINE - VOLUME 1**

**Tuesday, October 11, 2016**


Appearances:

```
                                    H. William Reising
                                    Christopher J. Scott
Kevin S. Ernst                      Plunkett & Cooney
Law Offices of Kevin Ernst          111 E. Court Street, #1B
645 Griswold Street, #1808          Flint, Michigan  48502
Detroit, Michigan  48226            (810) 232-5100
(313) 965-4822                       On behalf of Defendants

Dean D. Elliott
321 South Williams Street
Royal Oak, Michigan  48067
(248) 543-9000
  On behalf of Plaintiff
```

                       -   -   -

*To obtain a certified transcript, contact:*
*Sheri K. Ward, Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 219*
*Detroit, Michigan  48226*
*(313)965-4401 · ward@transcriptorders.com*

*Transcript produced using machine shorthand and CAT software.*

*Hearing on Motions in Limine – Volume 1*
*Tuesday, October 11, 2016*

**I  N  D  E  X**

<u>Motion Hearing</u>                                                    <u>Page</u>

Admissibility of Policies and Procedures .........3

Malicious Prosecution ............................8

Drug Use .......................................14

Defense Witnesses ..............................19

Apportionment of Liability and Damages ..........23

Plaintiff's Exhibits ...........................29

Certification of Reporter ......................34

–   –   –

*13-13308; Jennings v. Fuller, et al.*

*Admissibility of Internal Policies and Procedures*
*Tuesday/October 11, 2016*

Page 3

1              Detroit, Michigan

2              Tuesday, October 11, 2016

3              10:20 a.m.

4                     -   -   -

5        **THE CLERK:**  The court calls the matter of *Jennings v.*

6  *Fuller*, Case Number 13-13308.

7        **THE COURT:**  Be seated.

8     Okay.  We have a series of motions in limine.  The first

9  is the -- we'll take the defendants' motions first.

10     The first motion is to preclude the internal -- the

11  plaintiff from introducing internal policies and procedures of

12  the Genesee County Sheriff; is that right?

13        **MR. SCOTT:**  Yes, Your Honor.

14        **THE COURT:**  Do we have a copy of their procedures,

15  the document they want to make reference to?

16        **MR. SCOTT:**  It's not clear exactly --

17        **THE COURT:**  What?

18        **MR. SCOTT:**  I did not bring a copy of the general

19  orders with me, Your Honor.

20        **THE COURT:**  Come up here.

21        **MR. SCOTT:**  I don't have a copy of the general

22  orders.  It's our position --

23        **THE COURT:**  Mr. Ernst, do you have a copy of the

24  regulations?

25        **MR. ERNST:**  I don't have a copy of the document

*13-13308; Jennings v. Fuller, et al.*

*Admissibility of Internal Policies and Procedures*
*Tuesday/October 11, 2016*

1    itself.

2           **THE COURT:**  Well, how can I deal with what you want

3    to exclude if I don't know what it is?

4           **MR. SCOTT:**  It's the defendants' position,

5    Your Honor, that there is no *Monell* claim or other claim

6    against --

7           **THE COURT:**  I'm sorry, sir, we have to start -- your

8    motion is to preclude from introducing internal policies and

9    procedures, and I want to know -- that's a particular document,

10   and I want to see the document.  I'm not going to issue -- a

11   general order -- until I see the document I can't even begin to

12   deal with it.  I think that's simple enough.

13          **MR. SCOTT:**  I hear what you're saying, Your Honor.

14   We can certainly address it.  We can bring the policies and

15   procedures at a later date.

16          **THE COURT:**  Well, let's assume they have policies and

17   procedures governing the conduct of their offices.  What

18   arguable relevance -- and assume they are going to want to

19   introduce evidence that they violated the policies and

20   procedures.  Of what arguable relevance is that to the issues

21   in this case, Mr. Ernst, or whoever is going to argue?  Come up

22   here.

23          **MR. ERNST:**  Well, the relevance, Your Honor, is, as

24   set forth in the case law that I submitted to the Court, is

25   that the jury can consider all of the circumstances surrounding

*Admissibility of Internal Policies and Procedures*
*Tuesday/October 11, 2016*

Page 5

1  the use of force.  So, for example, if the officers violate

2  their own training, their own policies and procedures, then the

3  jury can consider that in whether the use of force was

4  unreasonable.  Those policies and procedures don't set the

5  Constitutional bar or the standard, but it is something that

6  the jury can consider.

7        **THE COURT:**  Do you know what those policies and

8  procedures say?

9        **MR. ERNST:**  Yes, I do.  Some of them involve, for

10  example, if they, if they spray somebody with pepper spray,

11  they are supposed to wash them off right away and they are not

12  supposed to put a spit hood on them before they wash them off.

13  They are not supposed to lay them on their stomach, things like

14  that.

15        **THE COURT:**  Okay.  That's number one.

16     Number two, have I seen your jury instructions yet?

17        **MR. ERNST:**  Yes.

18        **THE COURT:**  No, I objected to the draft that you gave

19  me in the office, and I told you to get started on a new set.

20        **MR. ERNST:**  Your Honor, I believe what the Court

21  instructed us to do is to submit our proposed instructions to

22  the defendant and they were going to red-line them.

23        **THE COURT:**  Yeah.  Has that been done yet?

24        **MR. SCOTT:**  Yes.  Your Honor, I set a copy of

25  proposed joint instructions to Mr. Elliott last week.  I have

*13-13308; Jennings v. Fuller, et al.*

*Admissibility of Internal Policies and Procedures*
*Tuesday/October 11, 2016*

Page 6

1  not heard back from him.

2         **THE COURT:**  Well, until I see the instructions and

3  how you define the use of excessive force and what role you say

4  the rules and regulations play, I can't rule on this motion.  I

5  know that the case law is divided, it goes both ways, so until

6  I see the rules, until I see how the jury is going to be

7  instructed, I'm going to reserve decision.

8       Is there any Michigan law on this subject?

9         **MR. ERNST:**  State law, Your Honor?

10        **THE COURT:**  Yeah.

11        **MR. ERNST:**  No.

12        **THE COURT:**  There's no state law at all?

13        **MR. ERNST:**  No.

14        **THE COURT:**  Is there any law in the Sixth Circuit?

15        **MR. ERNST:**  Yes.

16        **THE COURT:**  Which case?

17        **MR. SCOTT:**  We cite *Smith v. Freland*, Your Honor.

18        **THE COURT:**  Let me see the case.

19        **MR. ERNST:**  This isn't an actual copy of the case.

20  This is just my brief.  In *Smith v. Freland* --

21        **THE COURT:**  Ben, do we have a copy of the case?

22        **THE CLERK:**  I quote the relevant parts, but I can go

23  print --

24        **THE COURT:**  Where is it?

25        **THE CLERK:**  There.

*Admissibility of Internal Policies and Procedures*
*Tuesday/October 11, 2016*

Page 7

1        **THE COURT:**  Wait a second, wait a second.  *Smith v.*

2  *Freland.*  This is what the Sixth Circuit said:

3              "Furthermore, the fact that Officer Schulcz' actions

4              may have violated ... policies regarding ... use of

5              force does not require a different result.  Under

6              1983, the issue is whether [the officer] violated the

7              Constitution...  A city can ... hold its officers to

8              a higher standard...  To hold that those cities with

9              strict policies commit more Constitutional violations

10             than those with lax policies would be an unwarranted

11             extension of the law...

12       They adopted the rule that they weren't relevant in that

13  case.

14       **MR. ERNST:**  Well, Your Honor, if I may, I think what

15  the *Smith* case says is that the fact that there is, that the

16  police officer violated the policies does not make it a

17  Constitutional violation in and of itself and --

18       **THE COURT:**  And then Judge Borman said -- well, we

19  don't have *Alverado*.  Those are the two cases.

20       Okay.  I'm going to reserve decision on that until I get a

21  copy of them and I see the instructions on how they are dealt

22  with because I'm going to have to give the jury a limiting

23  instruction that violation of the policy per se is not a

24  Constitutional wrong, but it can be taken into consideration in

25  judging the police officers' conduct.  Okay?

1      **MR. ERNST:**  Yes, Your Honor.

2            **THE COURT:**  That's that one.  What's the next one?

3            **MR. SCOTT:**  The next one, Your Honor, is Defendants'

4   Motion in Limine to Preclude Evidence/Argument Regarding

5   Unreasonable Seizure, Arrest, Detention and Prosecution.

6            **THE COURT:**  Keep your voice up.  What?

7            **MR. SCOTT:**  Defendants' Motion in Limine to Preclude

8   Evidence and Argument Regarding Unreasonable Seizure, Arrest,

9   Detention and Prosecution in Violation of 4th and 14th

10  Amendments.

11           **THE COURT:**  I don't understand what you're talking

12  about.

13           **MR. SCOTT:**  Essentially, Your Honor, the defendants

14  are saying that plaintiff's claim regarding unlawful

15  prosecution, seizure, detention is precluded by collateral

16  estoppel and lack of evidence.  This is an excessive force

17  case, number one, alleged in the complaint, but there's a

18  collateral claim apparently against Deputies Fuller and

19  Kennamer only regarding unlawful prosecution, seizure,

20  detention.

21           **THE COURT:**  Is this the malicious prosecution?

22           **MR. SCOTT:**  Exactly.  I think it's malicious

23  prosecution, but that's not how it's specifically pled in the

24  complaint.  They pleaded it a little bit differently than that.

25           **THE COURT:**  Well, what is the little difference?  The

*Malicious Prosecution*
*Tuesday/October 11, 2016*

1    difference is excessive force.

2         **MR. SCOTT:**  Well, they use the words "unreasonable

3    seizure, arrest, detention and prosecution."  It's our position

4    that essentially --

5         **THE COURT:**  Do you know what he's talking about?

6         **MR. ERNST:**  I don't know, Your Honor.  I have a

7    malicious prosecution claim and --

8         **THE COURT:**  Yeah, but they presented the facts to the

9    prosecutor and the prosecutor issued a complaint.

10        **MR. ERNST:**  Right, based on false, false --

11        **THE COURT:**  Well, I want to see the statements.  Do

12   you have the statements?

13        **MR. ERNST:**  Yeah, they are the police reports.

14        **THE COURT:**  Have you got a copy of it here?

15        **MR. ERNST:**  No, Your Honor.  I didn't --

16        **THE COURT:**  Please, I can't deal in the abstract.  I

17   want to know the parameters of that claim.

18        **MR. ERNST:**  Your Honor, we dealt with this, we dealt

19   with this in the motion for summary judgment that was filed

20   months and month ago, and we set forth all of the statements,

21   the testimony at the preliminary exam that constituted the

22   materially false statements.

23        **THE COURT:**  Wait a second.

24        **MR. SCOTT:**  Your Honor, only one defendant testified

25   at the preliminary exam.

*Malicious Prosecution*
*Tuesday/October 11, 2016*

Page 10

1          THE COURT:  What?

2          MR. SCOTT:  Your Honor, only one defendant testified

3   in the preliminary exam that resulted in the probable cause

4   finding.  That was Deputy Fuller.  His testimony is cited in

5   the motion.  It's unrebutted that Mr. Jennings bit Deputy

6   Fuller, and that resulted in charges against Mr. Jennings.

7          MR. ERNST:  No, that's not true, Your Honor.  Deputy

8   Fuller testified that Jennings pulled his arm away from the

9   wall, turned aggressively --

10         THE COURT:  All of that is part of the excessive

11  force claim.

12         MR. ERNST:  No, we have a malicious prosecution

13  claim.

14         THE COURT:  I know, but what is the malicious

15  prosecution claim?

16         MR. ERNST:  That they prosecuted him for resisting

17  and obstructing without probable cause.  That's our claim.

18         THE COURT:  No, they told the prosecutor what

19  occurred, and the prosecutor said this is enough to raise a

20  criminal complaint.

21         MR. ERNST:  No, they --

22         THE COURT:  Where is the complaint?

23         MR. ERNST:  They lied to the prosecutor about what

24  happened and that's what caused him to issue --

25         THE COURT:  No, wait, wait.

*13-13308; Jennings v. Fuller, et al.*

*Malicious Prosecution*
*Tuesday/October 11, 2016*

Page 11

1      **MR. SCOTT:**  The Complaint is Exhibit B to our motion,

2  Your Honor.  On the Complaint is Lieutenant Tocarchick, who is

3  not a party to this case.

4      **THE COURT:**  No, all of this is subsumed by the claim

5  for use of excessive force.

6      **MR. ERNST:**  Well, Your Honor, we have a separate

7  claim for malicious prosecution.

8      **THE COURT:**  I know you have a separate claim for

9  malicious prosecution, but they told their story to the

10  prosecutor.  It's not necessarily that they lied.  They gave

11  him their version of what occurred, and the prosecutor on that

12  basis issued a warrant.

13      **MR. ERNST:**  And *Sykes* specifically says that the

14  police cannot hide behind the decision, they are not immunized

15  by the decision of the prosecutor if they provide materially

16  false information.

17      **THE COURT:**  I don't know that it was materially

18  false.

19      **MR. ERNST:**  Well, that's for the jury to decide.

20      **THE COURT:**  No, it isn't for the jury to decide.  If

21  the jury decides that it was false, then you are going to

22  prevail on the excessive force claim.  So it's the same thing

23  as the excessive force claim.

24      **MR. ERNST:**  Your Honor, I beg to differ.  What the

25  officers say has nothing to do with their excessive force

*13-13308; Jennings v. Fuller, et al.*

*Malicious Prosecution*
*Tuesday/October 11, 2016*

Page 12

1    claim.  What they told the prosecutor has nothing to do --

2           **THE COURT:**  No, they described their conduct to the

3    prosecutor.

4           **MR. ERNST:**  Right, and that's the basis of the

5    malicious prosecution claim.

6           **THE COURT:**  No, no, no, no, no.  I'll want to see

7    your jury instruction.  All you're saying is their description

8    of what occurred, their description of what occurred -- if you

9    prevail on the excessive force claim, then their description of

10   what occurred will not prevail.  It's the same evidence.  They

11   are going to describe what they said was their conduct, and on

12   the basis that they gave it to the prosecutor, he found it

13   sufficient -- he found probable cause.

14       What you're saying, I think, is every time you have an

15   excessive -- you prevail on an excessive -- every time there's

16   an incident involving an interaction between a police officer

17   and a citizen and on the basis of that interaction the police

18   officers take their version of what occurred to a prosecutor

19   and the prosecutor on that basis issues a warrant, he's

20   listened to them, he believes them, he believes them, and a

21   warrant is issued and subsequently they decide not to go

22   forward with the case, and then they prevail on their excessive

23   force claim because their version of what occurred when they

24   tell it to a jury, the jury decides excessive force occurred,

25   automatically there's a malicious prosecution claim.

*13-13308; Jennings v. Fuller, et al.*

*Malicious Prosecution*
*Tuesday/October 11, 2016*

1      **MR. ERNST:**  No, that's not true at all.  That's not

2   true at all.

3          **THE COURT:**  That's what you're saying.

4          **MR. ERNST:**  No, that's not what I'm saying, Your

5   Honor.  There's all types of situations where they could still

6   legitimately charge somebody and use excessive force when

7   their -- when they take them into custody or something.  That

8   the person could have done something illegal --

9          **THE COURT:**  Well, you give me your jury instruction

10   on malicious prosecution, then we'll see.

11          **MR. ERNST:**  Okay.  And I'm relying on a very clear

12   Sixth Circuit case, *Sykes*.

13          **THE COURT:**  Which is that?

14          **MR. ERNST:**  It's Sykes *v. Anderson*, 625 F.3d 294, a

15   Sixth Circuit case from 2010.

16          **THE COURT:**  Okay, okay.

17          **MR. ERNST:**  Which clearly says that if the police --

18          **THE COURT:**  All right.  I will look at those

19   two cases again.  Okay?

20          **MR. ERNST:**  Okay.

21          **THE COURT:**  And I want your jury instruction.

22          **MR. ERNST:**  Okay.

23          **THE COURT:**  Okay?

24          **MR. ERNST:**  Got it.

25          **THE COURT:**  And the exhibits which relate to --

*Drug Use*
*Tuesday/October 11, 2016*

Page 14

1          **MR. ERNST:**  The policies and procedures and the false

2  statements.

3          **THE COURT:**  Yeah.

4          **MR. ERNST:**  Okay.

5          **THE COURT:**  Thank you.  Okay.

6      Now, what motions do you have?

7          **MR. ERNST:**  Well, we just filed them.  Defendants

8  haven't had a chance to respond, Your Honor.

9          **THE COURT:**  That's all right.  They can respond

10  orally.  What are the motions you want?

11          **MR. ERNST:**  I'm sorry, Your Honor?

12          **THE COURT:**  What motions do you have?

13          **MR. ERNST:**  We have various motions in limine

14  regarding evidence.

15          **THE COURT:**  Where is his motions?  Two of them.

16          **MR. ERNST:**  And we have one other one that's going to

17  be filed momentarily.

18          **THE COURT:**  What?

19          **MR. ERNST:**  We have one other one that's going to be

20  filed momentarily.

21          **THE COURT:**  You have a motion?

22          **MR. ERNST:**  We have a motion about keeping out his

23  history of substance abuse.

24          **THE COURT:**  Okay.  What arguable relevance is his

25  history of drug abuse?

*13-13308; Jennings v. Fuller, et al.*

*Drug Use*
*Tuesday/October 11, 2016*

Page 15

1           **MR. SCOTT:**  This whole incident stems --

2           **THE COURT:**  What?

3           **MR. SCOTT:**  The defendants' position is this whole

4   incident is a result of Mr. Jennings' uncontrollable behavior

5   in the jail.  He was intoxicated by alcohol.  There's no

6   question.  The arresting officer did testing on the road, and

7   he believed he was --

8           **THE COURT:**  Okay.  That's not drug use.

9           **MR. SCOTT:**  Well, the nystagmus test performed by the

10  arresting officer, who is not a defendant, says right in his

11  report that it indicated he was under the influence of

12  something other than alcohol.

13          **MR. ERNST:**  And that's just nonsense.

14          **THE COURT:**  That's hearsay.

15          **MR. SCOTT:**  Well, there's medical records that show

16  he has a history of substance abuse, et cetera.

17          **THE COURT:**  I know there's medical records, but who

18  said he was under the influence of -- that's highly

19  prejudicial, and unless you can establish that he was drugged

20  up, that's a bad way of putting it, that he was suffering from

21  the use of drugs, no.

22          **MR. SCOTT:**  Several of the defendants are long-time,

23  very experienced police officers, and they will testify they

24  have dealt with hundreds, if not thousands, of people that were

25  intoxicated by alcohol --

*13-13308; Jennings v. Fuller, et al.*

*Drug Use*
*Tuesday/October 11, 2016*

Page 16

1       **THE COURT:**  No, no.  They can't do that.  No, that's

2   highly prejudicial.  That's highly prejudicial.  More

3   prejudicial than probative.  In the circumstances of this case

4   and in the circumstances of the videos.  It's the videos that

5   are important here.  You can't -- unless you can establish that

6   at the time he was arrested and taken into custody he was under

7   the influence of drugs.

8       **MR. ERNST:**  And, Your Honor, we have several tests,

9   toxicology tests that were performed on him.  All of them show

10  that they were negative for drugs, and he wants his witnesses

11  to speculate that he must have been high because --

12      **THE COURT:**  You know, Mr. Ernst, there's an old, old

13  rule that you keep violating because you're going to talk me

14  out of it if you talk too much.

15      **MR. SCOTT:**  Your Honor, one more --

16      **THE COURT:**  No, when you come to your case in chief,

17  your defense, you will let the Court know that you want to

18  introduce evidence of drug use and at that time I'll revisit

19  the ruling depending upon what the record shows, but as of now

20  there will be no mention of drug use in the opening statement

21  or in any question that you ask.  At that point you will, you

22  will ask for a recess and I'll revisit this ruling.

23      **MR. ERNST:**  And, Your Honor, I would ask the Court to

24  instruct counsel to --

25      **THE COURT:**  What?

*13-13308; Jennings v. Fuller, et al.*

*Drug Use*
*Tuesday/October 11, 2016*

1      **MR. ERNST:**  I would ask the Court to order counsel to

2  instruct his defendants not to do it because I intend to call

3  them in my case in chief.

4      **THE COURT:**  Likewise.  You tell your witnesses and

5  your defendants that they can't do that.

6      **MR. SCOTT:**  Okay.  One more thing, Your Honor.  On

7  that issue as to damages, plaintiff has a claim, he's

8  essentially claiming Post-Traumatic's Stress Disorder and other

9  psychological conditions, and I think it's potentially -- we

10  have an expert neuropsychologist that may offer testimony

11  regarding this guy's background, essentially being a substance

12  abuser, being involved in prison for substance abuse or drugs,

13  et cetera.  These are all issues that go to his mental --

14      **THE COURT:**  That's something different.  What's your

15  response to is that, Mr. Ernst?

16      **MR. ERNST:**  Well, Your Honor --

17      **THE COURT:**  It goes to the claim for damages.

18      **MR. ERNST:**  Well, Your Honor, we're talking about

19  things that happened years before this incident, and his

20  damages are Post-Traumatic Stress Disorder from getting beat.

21  How does the fact that he used drugs in the history before this

22  incident have anything to do with whether he has Post-Traumatic

23  Stress Disorder from a traumatic event?

24      **THE COURT:**  Have you got a report from your expert?

25      **MR. SCOTT:**  We do, Your Honor.

*13-13308; Jennings v. Fuller, et al.*

*Drug Use*
*Tuesday/October 11, 2016*

Page 18

1      **THE COURT:**  Have you shown it to Mr. Ernst?

2      **MR. SCOTT:**  Yes.  His deposition is this evening.

3      **THE COURT:**  I want to see the deposition testimony

4  because I -- I want to see the deposition testimony because

5  what you're leading me to is that we bifurcate liability and

6  damages with the same jury.  That the jury doesn't hear any

7  testimony about drug use in the liability phase.  That's the

8  only way to eliminate the prejudice.  I want to see the

9  expert's testimony, his report.

10      **MR. SCOTT:**  Okay.  We can get you the report, and

11  like I said, his deposition is this evening.

12      **THE COURT:**  And the deposition, but I want to see the

13  report.  I assume you got a report before the deposition.

14      **MR. SCOTT:**  Yes, we have a report.

15      **THE COURT:**  Let me see the report.

16      **MR. SCOTT:**  I don't have it with me, Your Honor.

17      **THE COURT:**  Well, then you will submit it.

18      **MR. SCOTT:**  Sure, I will.

19      **THE COURT:**  Okay.  What else?  We have gone by drug

20  use.  What's the second motion, Mr. Ernst?

21      **MR. ERNST:**  I'm sorry, Your Honor.

22      (Discussion held off the record.)

23      **MR. ERNST:**  Your Honor, one of the other things with

24  regard to their expert that I would just point out for the

25  Court is that the expert, in his report he basically contrasts

*13-13308; Jennings v. Fuller, et al.*

*Defense Witnesses*
*Tuesday/October 11, 2016*

Page 19

1   the testimony of our client versus the testimony of other

2   people and comments on it and it's like --

3           **THE COURT:**  I haven't seen the report, Mr. Ernst.

4           **MR. ERNST:**  I just want to give the Court notice, but

5   our other motions deal with their attempt to call a bunch of

6   people on their witness list to act as experts who they have

7   never provided reports on in violation of --

8           **THE COURT:**  Who are these witnesses?  Where is their

9   witness list?

10      Have we got that up here, Ben?

11          **MR. ERNST:**  I don't have it with me.  I didn't think

12  we were going to argue those today since the defendants haven't

13  responded to it.

14          **MR. SCOTT:**  I have the witness list if you care to

15  see it.  The motion only addresses five witnesses, Your Honor,

16  and we won't be calling three of those five witnesses.

17          **THE COURT:**  All right.  Who are the two you are going

18  to call?

19          **MR. SCOTT:**  We plan on calling Undersheriff

20  Christopher Swanson.

21          **THE COURT:**  Wait a minute, wait a minute.

22  Defendants -- didn't I tell you to file an amended witness

23  list?

24          **MR. ERNST:**  You did, Your Honor.

25          **THE COURT:**  Didn't I comment on this?

*13-13308; Jennings v. Fuller, et al.*

*Defense Witnesses*
*Tuesday/October 11, 2016*

Page 20

1          **MR. SCOTT:**  There was suggestion regarding the

2    witness list, and you said to submit it without the caption on

3    it before we give it to the jury.

4          **MR. ERNST:**  Well, you also told them to file an

5    amended without the judges listed on it and the prosecutor.

6          **MR. SCOTT:**  That issue was reserved until we had a

7    ruling on the motion that we argued this morning that you took

8    under advisement because we wouldn't need prosecutors,

9    et cetera, if there is no malicious prosecution.

10          **THE COURT:**  We are talking about the experts.

11          **MR. SCOTT:**  It had nothing to do with that.

12          **THE COURT:**  Who are the experts?

13          **MR. SCOTT:**  The two people at issue, there's

14    Undersheriff Christopher Swanson.  If Your Honor is going to

15    rule that the policies and proceeding come in, Swanson will

16    come in and explain those policies and talk about how the

17    behavior is consistent with the policies or, you know,

18    essentially explain the issue involving the policies and

19    procedures in conjunction with reports and what happened here.

20          **MR. ERNST:**  That's an expert, Your Honor, and they

21    didn't provide us a report, and they have another policies and

22    procedures expert, Mr. Ross.

23          **THE COURT:**  You can't have anybody express an opinion

24    without giving them a report first.

25          **MR. SCOTT:**  Well, essentially he's a fact witness

*13-13308; Jennings v. Fuller, et al.*

*Defense Witnesses*
*Tuesday/October 11, 2016*

Page 21

1    that would offer explanation as to various things based on his

2    experience with these policies and procedures.

3           **THE COURT:**  Well, until I see that -- no, no.

4           **MR. ERNST:**  He's going to express an opinion,

5    Your Honor, that this was --

6           **THE COURT:**  No.  Until I see that policy and

7    procedure document I can't rule, but I think the policy and

8    procedure document is a supplement to the instruction on

9    Constitutional, and if you've got an expert on police

10   practices, that expert will have to incorporate it.  I'm not

11   going to let a deputy sheriff speak.  That's not an expert.

12   That's not an expert.  He's associated with it.

13        And I don't think we get into an argument over whether --

14   if the policy says you can't hit someone over the head, I don't

15   think we will get an expert that comes in and explains what

16   that means.

17          **MR. SCOTT:**  Well, he can interpret these rules

18   because he uses them on a daily basis.

19          **THE COURT:**  I said I have not seen the rules.

20          **MR. SCOTT:**  Right.

21          **THE COURT:**  What's the other one?

22          **MR. SCOTT:**  The other one would be Captain Jason

23   Gould, who was a sergeant.  He is a fact witness.  He's the

24   captain in charge of the jail now.  He was the sergeant that

25   was a supervisor that came in and he was the one that went into

*13-13308; Jennings v. Fuller, et al.*

*Defense Witnesses*
*Tuesday/October 11, 2016*

Page 22

1   the safety cell and oversaw Mr. Jennings' release from the bed.

2          **THE COURT:**  What's the objection?

3          **MR. ERNST:**  Well, because what he lists on his

4   witness list is that he's going to comments on the videos and

5   the police reports and all of these things.  In other words,

6   he's going to opine on them.  So I don't mind if he's going to

7   testify as to what he saw and did that day, but he can't look

8   at the video and the police reports and offer his opinions and

9   characterize that evidence.  He's essentially trying to call

10  him as an expert.

11         **THE COURT:**  He's a police expert.

12         **MR. ERNST:**  What?

13         **THE COURT:**  He's an expert.

14         **MR. ERNST:**  But they never gave us a report.

15         **THE COURT:**  He's got to have a report if he's going

16  to express an opinion.

17         **MR. SCOTT:**  He did a report in this case, but

18  moreover, he had personal contact with Mr. Jennings.  He's

19  going to talk about --

20         **THE COURT:**  No, no.  Well, we'll see.  We will go

21  question by question, but he can't express any expert opinion

22  without a report.

23         **MR. ERNST:**  And it's far too late to file reports

24  now.

25         **MR. SCOTT:**  He's a fact witness, Your Honor.

*13-13308; Jennings v. Fuller, et al.*

*Apportionment of Liability and Damages*
*Tuesday/October 11, 2016*

Page 23

1       **THE COURT:** Well, we'll see. If he's a fact witness

2   and you call him and you have an objection, Mr. Ernst, we'll

3   deal with it at the time.

4       **MR. SCOTT:** He can testify as to what he saw and --

5       **THE COURT:** Did you hear what I said? We'll go

6   question by question.

7       **MR. SCOTT:** He's the one, he took him from the safety

8   cell to medical.

9       **THE COURT:** Did you hear what I just said?

10      **MR. SCOTT:** I understand, Your Honor.

11      **THE COURT:** What else?

12      **MR. SCOTT:** We are not using the other

13  three witnesses that they complain about.

14      **THE COURT:** What else?

15      **MR. ERNST:** I think that's it right now, Your Honor.

16      **THE COURT:** What I've got to get from you is the --

17      **THE CLERK:** The defendant has a motion.

18      **MR. SCOTT:** We have a --

19      **THE COURT:** Apportionment of damages?

20      **MR. SCOTT:** Yes, Your Honor.

21      **THE COURT:** The jury is not going to apportion the

22  damages. We can do it later. That's for the Court to decide,

23  not for the jury.

24      **MR. SCOTT:** Well, it goes to more than damages. It's

25  liability and damages, Your Honor, and it's essentially part of

*13-13308; Jennings v. Fuller, et al.*

*Motions in Limine*
*Tuesday, October 11, 2016*

Page 24

1  the excessive force standard.

2      **THE COURT:**  No.  I want to see what the jury

3  instructions are.  I'll deal with that -- and the verdict form.

4  I told you that.  I told you that last time.  I'm not going to

5  give you any ruling until I see the verdict form and the

6  instruction on damages.

7      **MR. ERNST:**  And he had submitted, he submitted

8  seven separate verdict forms.

9      **THE COURT:**  No, there is not going to be seven

10  separate verdict forms.  There's going to be a single verdict

11  form.

12      **MR. ERNST:**  And he's essentially asking for like a

13  comparative negligence type of instruction.

14      **THE COURT:**  There's no comparative negligence.

15      **MR. SCOTT:**  We have also filed, Your Honor, on Friday

16  pursuant to your instructions objections to plaintiff's witness

17  list and verdict form and --

18      **THE COURT:**  I just got it Friday?  He hasn't had a

19  chance -- let me see what you filed.

20    What other motion are you going to file, Mr. Ernst?

21      **MR. SCOTT:**  Your Honor, the last time we were here,

22  my understanding was you instructed us to file objections to --

23  whatever objections we wanted to raise before trial by Friday

24  for this hearing.  So we filed those objections, including that

25  apportionment brief.

*13-13308; Jennings v. Fuller, et al.*

*Motions in Limine*
*Tuesday, October 11, 2016*

Page 25

1        **THE COURT:** Well, wait a second. What did you file

2  Friday?

3        **MR. SCOTT:** We filed Defendants' Objections to

4  Plaintiff's Proposed Trial Witnesses, Defendants' Objections to

5  Plaintiff's Proposed Verdict Form and Defendants' Objections

6  to -- along with that apportionment brief.

7        **THE COURT:** Wait a second. Hold on a second.

8      All right. Let's review briefly what we've covered here

9  today.

10     So we've got, first we've got your motion re: policies and

11  procedures, right?

12        **MR. SCOTT:** Yes, Your Honor.

13        **THE COURT:** All right. That -- the brief is Document

14  73. Is there a separate motion paper?

15        **MR. SCOTT:** It's all Document 73, Your Honor.

16        **THE COURT:** What?

17        **MR. SCOTT:** It's all Document 73.

18        **THE COURT:** Okay. And then we have, we have -- okay.

19  The answer is Document 98. What I have ruled is I want to see

20  the document, policies and procedures, and I want to see the

21  instruction. And I have said tentatively there can be

22  reference to them. That's the first motion.

23     The second motion --

24        **MR. SCOTT:** Your Honor, to the extent there is

25  reference --

*13-13308; Jennings v. Fuller, et al.*

*Motions in Limine*
*Tuesday, October 11, 2016*

Page 26

1      **THE COURT:**  What?

2      **MR. SCOTT:**  To the extent there's any reference,

3  there's a limiting instruction regarding how they can be relied

4  upon.

5      **THE COURT:**  Yeah.

6      The second motion is the motion re: malicious prosecution.

7  That's what we're going to call that document.  That's Document

8  76 and --

9      **MR. ERNST:**  The response is 97, Your Honor.

10     **THE COURT:**  Document 97.

11     I want documents supporting the claim, right?

12     **MR. ERNST:**  Correct.

13     **THE COURT:**  And the instruction.

14     **MR. ERNST:**  And the Court indicated it was going to

15  review the Sykes *v. Anderson* case.

16     **THE COURT:**  What are the cites?

17     **MR. ERNST:**  625 F.3d 294.

18     **THE COURT:**  625.

19     **MR. ERNST:**  F.3d 294.

20     **THE COURT:**  294.

21     **MR. ERNST:**  Yes.

22     **THE COURT:**  And what else?

23     **MR. ERNST:**  Sixth Circuit, 2010.

24     **THE COURT:**  I know.  What's the other reference?

25     **MR. ERNST:**  That was, that was the controlling case

*13-13308; Jennings v. Fuller, et al.*

*Motions in Limine*
*Tuesday, October 11, 2016*

Page 27

1   on that issue.

2          **THE COURT:**  That's the controlling case.

3          **MR. ERNST:**  I submitted the jump cites in Document

4   97.

5          **THE COURT:**  Pardon?

6          **MR. ERNST:**  I submitted the jump cites, the specific

7   page numbers in Document 97.

8          **THE COURT:**  97 or 91?

9          **MR. ERNST:**  Document 97 is our response.

10          **THE COURT:**  Okay.  Document 97.

11      Now, those are two of the defendants' motions.

12          **MR. ERNST:**  Right.

13          **THE COURT:**  Then we've got, three, motion re: drug

14  use, and I have said that's granted subject to the Court must

15  see expert report.

16          **MR. SCOTT:**  Your Honor, I understand your ruling.

17  This motion was just filed yesterday at 3:00 p.m.  We have

18  had --

19          **THE COURT:**  If you want to file a response, you can,

20  but as of now, you heard what I said, but I want to see the

21  expert's report.

22          **MR. SCOTT:**  I understand.

23          **THE COURT:**  What?

24          **MR. SCOTT:**  I understand.

25          **THE COURT:**  D may file answer.

*13-13308; Jennings v. Fuller, et al.*

*Motions in Limine*
*Tuesday, October 11, 2016*

Page 28

1      What's the fourth motion?

2           **MR. ERNST:**  The fourth one concerned the other

3   witnesses who were going to offer opinion testimony who had not

4   provided --

5           **THE COURT:**  Wait a second.  What document is this?

6   Document 100.

7      What's the other motion?  Experts.  Motion re: witnesses.

8   What document is that, sir?

9           **MR. ERNST:**  I don't have it.

10          **THE CLERK:**  99.

11          **THE COURT:**  What?

12          **THE CLERK:**  99.

13          **THE COURT:**  What document?

14          **MR. ERNST:**  99, I believe.

15          **THE COURT:**  You haven't filed an answer to that.

16          **MR. SCOTT:**  We have not.  They just filed that

17   yesterday afternoon as well.

18          **THE COURT:**  All right.  Then we're going to wait for

19   an answer.  Okay.  Wait a second.

20      Then we've got two more motions here.  We've got

21   three more motions here.  Wait a minute.  Where is the one re:

22   Witnesses?

23      Wait a minute.  I'm trying to find the fourth motion.

24   Where is that fourth motion?  Okay.  That's 99.

25      All right.  Then we've got a fifth motion.  D's objection

1  to trial witnesses, that's Document 95.  You've got to file an

2  answer to that.

3            **MR. ERNST:**  Yes, Your Honor.

4            **THE COURT:**  Okay.  Then we've got trial exhibits.

5  That's Document 94.  You've got to file an answer to that.

6            **MR. ERNST:**  I mean I could deal with one component of

7  it.

8            **THE COURT:**  What?

9            **MR. ERNST:**  I could deal with one component of it

10  right now.

11           **THE COURT:**  What?

12           **MR. ERNST:**  They object to the MSP lab reports

13  claiming we don't have a witness to authenticate them when they

14  listed the lab tech who did the report in their witness list.

15           **THE COURT:**  You want them to bring in a witness to

16  authenticate the lab reports?

17           **MR. SCOTT:**  Well, the concern I have, Your Honor, is

18  I attempted to contact the toxicologist at the Michigan State

19  Police, and she's no longer there and she can't be found.  And

20  they want to say that this report somehow helps them and is

21  definitive on this drug issue, and I don't think that's the

22  case and the person --

23           **THE COURT:**  I haven't seen the exhibit yet.  You

24  don't dispute that it's an authentic document?

25           **MR. SCOTT:**  It's a document, but I spoke with someone

*Plaintiff's Exhibits*
*Tuesday/October 11, 2016*

Page 30

1   in the --

2          THE COURT:  It's in the files and records of the

3   State Police?

4          MR. SCOTT:  Right, but the person that -- it doesn't

5   mean what they say it means.

6          THE COURT:  Well, I don't know.  I would have to see

7   the exhibit first.  So you file your answer, okay?

8       And then there's another one.  Proposed verdict form.  I

9   have told you before -- what's this motion?

10          MR. SCOTT:  There's an issue regarding the proposed

11   verdict form of plaintiff, number one.  It has a claim on it

12   regarding --

13          THE COURT:  I told you guys before I'm not going to

14   deal with motions on the verdict form or the instructions.

15   We'll have a conference.  When you're ready to have a

16   conference, you will let the case manager know, and we'll deal

17   with the verdict form and the instructions in a conference,

18   okay?

19          MR. SCOTT:  Okay, Your Honor.

20          THE COURT:  We can't deal with it by motion.

21       And the last one is to apportion the damages.  Did you

22   file a brief in support of that?

23          MR. SCOTT:  We filed -- it's essentially a brief.

24   This issue has been discussed with Your Honor, and you said

25   file something by Friday so we --

*13-13308; Jennings v. Fuller, et al.*

*Plaintiff's Exhibits*
*Tuesday/October 11, 2016*

Page 31

1      **THE COURT:**  Wait a second.  What I have here is
2  Document 93.  Is there a brief accompanying it?
3      **MR. SCOTT:**  Yes.
4      **THE COURT:**  What document is it?
5      **MR. SCOTT:**  It's all Document 93.
6      **THE COURT:**  Okay.  Wait a second.
7    You will have to file a response to it.
8      **MR. ERNST:**  All right.  Very well.
9    I previously filed a memo on that issue, Your Honor, but
10  I'll just refile it as a response.
11      **THE COURT:**  Refile it as an answer.
12      **MR. ERNST:**  Okay.
13      **THE COURT:**  That's it.  There's seven motions in
14  limine.  We have just covered them, right?
15      **MR. ERNST:**  We have a couple more.  One of them deals
16  with his --
17      **THE COURT:**  When are you going to file them?
18      **MR. ERNST:**  Today.
19      **THE COURT:**  Today.
20      **MR. ERNST:**  One of them deals with his priors.
21      **THE COURT:**  What's the motion?
22      **MR. ERNST:**  One of them deals with his prior
23  convictions.
24      **THE COURT:**  Prior convictions.  Wait a minute.
25  What's the next one?

*13-13308; Jennings v. Fuller, et al.*

*Plaintiff's Exhibits*
*Tuesday/October 11, 2016*

Page 32

1          **MR. ERNST:**  One of them deals with the plaintiff's --

2    or the defendants testifying to legal conclusions.

3          **THE COURT:**  What?

4          **MR. ERNST:**  It deals with the defendants testifying

5    as to legal conclusions.

6          **THE COURT:**  What defendant?

7          **MR. ERNST:**  The defendants in these case, all of them

8    pretty much, but I'll --

9          **THE COURT:**  Well, I'll take a look at it, but it

10   seems to me that's --

11         **MR. ERNST:**  And their expert testifying as to legal

12   conclusions.

13         **THE COURT:**  Well, we'll see the motion.

14         **MR. ERNST:**  And we'll include his report.

15         **MR. SCOTT:**  He hasn't testified.

16         **MR. ERNST:**  Well, he filed a report.

17         **THE COURT:**  So there's nine motions.

18         **MR. ERNST:**  That's correct.

19         **THE COURT:**  Pardon?

20         **MR. ERNST:**  I believe that's correct, Your Honor.

21         **THE COURT:**  Okay.  When you get ready for a

22   conference on the instructions, you will let me know.  I want

23   to deal with them in advance.  Thank you.

24         **MR. ERNST:**  Thank you, Your Honor.

25         **MR. SCOTT:**  Your Honor, by way of scheduling, we are

*13-13308; Jennings v. Fuller, et al.*

*Plaintiff's Exhibits*
*Tuesday/October 11, 2016*

Page 33

1   picking the jury on Monday and trial on Tuesday.  It's already

2   Tuesday.  We now have four motion responses to motions that

3   have been filed and apparently two more motions coming --

4           **THE COURT:**  We'll have another conference Friday

5   morning, okay?

6           **MR. SCOTT:**  Okay.

7           **MR. ERNST:**  Very well, Your Honor.

8           **THE COURT:**  And we'll have a conference on the jury

9   instructions.  Thank you.

10          **MR. ERNST:**  Thank you, Your Honor.

11          **MR. SCOTT:**  Thank you, Your Honor.

12          **THE COURT:**  Wait a minute.  Wait a second.

13      Okay.  So there's two motions still coming, just to be

14  sure we know what we're doing.

15      Okay.  Thank you, sir.

16          **MR. ERNST:**  Thank you, Your Honor.

17          **MR. SCOTT:**  Thank you, Your Honor.

18          **MR. REISING:**  Thank you, Your Honor.

19      (Proceedings concluded at 11:09 a.m.)

20                      -   -   -

21

22

23

24

25

*Plaintiff's Exhibits*
*Tuesday/October 11, 2016*

Page 34

1          **C E R T I F I C A T I O N**

2          I certify that the foregoing is a correct transcription of

3    the record of proceedings in the above-entitled matter.

4

5    s/ Sheri K. Ward                              11/18/2016
     Sheri K. Ward                                 Date
6    Official Court Reporter

7                                   -    -    -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*13-13308; Jennings v. Fuller, et al.*