UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION


**WILLIAM JENNINGS,**

        Plaintiff,

                          **HONORABLE AVERN COHN**
   v.

                          **No. 13-13308**

**PATRICK FULLER, et al.,**

        Defendants.
_____/


              **JURY TRIAL - VOLUME 10**

              **Tuesday, November 1, 2016**


Appearances:

                                 H. William Reising
Kevin S. Ernst                     Christopher J. Scott
Law Offices of Kevin Ernst      Plunkett & Cooney
645 Griswold Street, #1808      111 E. Court Street, #1B
Detroit, Michigan  48226        Flint, Michigan  48502
(313) 965-4822                    (810) 232-5100
                                      On behalf of Defendants

Dean D. Elliott
321 South Williams Street
Royal Oak, Michigan  48067
(248) 543-9000
  On behalf of Plaintiff

                                    - - -

              *To obtain a certified transcript, contact:*
              *Sheri K. Ward, Official Court Reporter*
              *Theodore Levin United States Courthouse*
              *231 West Lafayette Boulevard, Room 219*
                   *Detroit, Michigan  48226*
              *(313)965-4401 · ward@transcriptorders.com*

*Transcript produced using machine shorthand and CAT software.*

*Jury Trial - Volume 10*
*Tuesday, November 1, 2016*

# I N D E X

| Defendant's Case in Chief | Page | Vol. |
|---|---|---|
| **William Kohen, M.D.** | | |
|    Videotaped Deposition | 4 | 10 |
| **Kirk Stucky, Psy.D.** | | |
|    Videotaped Deposition | 5 | 10 |
| **Thomas Byrd, M.D.** | | |
|    Videotaped Deposition | 9 | 10 |
| Defense Rests ................................. | 10 | 10 |

| Plaintiff's Rebuttal Case | Page | Vol. |
|---|---|---|
| **William Jennings** | | |
|    Direct Examination By Mr. Ernst: | 10 | 10 |
|    Cross-Examination By Mr. Reising: | 11 | 10 |
| Plaintiff Rests ................................ | 15 | 10 |
| Certification of Reporter ...................... | 19 | |

- - -

*13-13308; Jennings v. Fuller, et al.*

*Jury Trial - Volume 10*
*Tuesday, November 1, 2016*

V10-Page 3

1       Detroit, Michigan
2       Tuesday, November 1, 2016
3       9:27 a.m.
4            - - -
5  **THE CLERK:** Calling Case Number 13-13308, *Jennings v.*
6  *Fuller.*
7  **THE COURT:** Thank you.
8       Come in, folks.
9       (Jury in at 9:27 a.m.)
10 **THE COURT:** You can be seated.
11      Please proceed.
12 **MR. REISING:** Thank you, Your Honor. As indicated
13 yesterday, we have some video presentations to present to the
14 Court and the jury this morning, starting with the videotape of
15 Dr. William Kohen.
16 **THE COURT:** Good. Go ahead.
17 **MR. REISING:** Thank you. And before we start showing
18 the videos, the jurors should be aware that there might be some
19 jumps because the videotapes have been edited pursuant to
20 discussion with plaintiff's counsel and our side in terms of
21 what had to be resolved pursuant to the Court's instruction.
22 **THE COURT:** Thank you. Go ahead.
23 **MR. REISING:** We are proceeding right now,
24 Your Honor, I think.
25 **THE VIDEOGRAPHER:** Let me know if it's too loud or

*13-13308; Jennings v. Fuller, et al.*

*William Kohen, M.D. - Video*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 4

1  too soft.
2        **THE COURT:**  Pardon?
3        **THE VIDEOGRAPHER:**  Let me know if it's too loud or
4  too soft.
5     (Videotaped deposition testimony of William Kohen, M.D.
6      played back for the jury.)
7        **MR. ELLIOTT:**  Your Honor, that was supposed to be
8  muted.
9        **THE COURT:**  What?
10       **MR. ELLIOTT:**  That particular portion of testimony
11 was supposed to be muted, and I ask that it be stricken from
12 the record.
13       **THE COURT:**  The jury will disregard the last portion
14 of the doctor's testimony, and then go forward.
15    (Videotaped deposition continued.)
16       **MR. REISING:**  Your Honor, apparently there's some
17 technical issue with respect to the replay equipment.  We need
18 to take a short break.
19       **THE COURT:**  You are excused for a few minutes, folks.
20    (Jury out at 10:04 a.m.)
21       **THE COURT:**  What's the problem?
22       **THE VIDEOGRAPHER:**  The button that I use to mute,
23 Your Honor.
24       **THE COURT:**  Yeah.
25       **THE VIDEOGRAPHER:**  It's a button that's got a spring

*13-13308; Jennings v. Fuller, et al.*

*Kirk Stucky, Psy.D. - Video*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 5

1  on it.  You push it in, it stays in.  You push it again, it
2  pops up.  It is pushed in so it is muted, but it won't pop out.
3  I have never had this happen before.  If we can't get this
4  button fixed, we'll come up with a different method.
5         **THE COURT:**  Go ahead.
6      Are we ready?
7         **THE VIDEOGRAPHER:**  Yes, sir.
8         **MR. REISING:**  I think some of the defendants went
9  down the hall to the men's room.
10        **THE COURT:**  That's all right.
11     Come back in, folks.
12     (Jury in at 10:09 a.m.)
13        **THE COURT:**  Be seated.  Go ahead.
14     (Videotaped deposition continued, then concluded.)
15        **THE COURT:**  Call your next witness.
16        **MR. REISING:**  Yes, Your Honor.  We'll show the next
17 video.  The next video is going to be of Dr. Stucky, who was
18 the psychologist.
19        **THE COURT:**  Stucky?
20        **MR. REISING:**  Yes, sir.
21        **THE COURT:**  Thank you.
22     Are you ready to go?
23        **THE VIDEOGRAPHER:**  Just a moment.
24     (Videotaped deposition testimony of Kirk Stucky, Psy.D.
25     played back for the jury.)

*13-13308; Jennings v. Fuller, et al.*

*Kirk Stucky, Psy.D. - Video*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 6

1     **MR. ERNST:** Your Honor, may we approach?

2   (The following sidebar conference was held:)

3     **MR. ERNST:** Judge, the videographer keeps repeatedly
4 playing stuff that you said was going to come out.

5     **THE COURT:** I don't control what -- you guys said you
6 marked it up, and he played it. It's unfortunate, but I
7 can't -- do you want me to call a recess?

8     **MR. ERNST:** Please.

9   (End of discussion at side bar.)

10     **THE COURT:** We're going to take a short recess,
11 folks.

12   (Jury out at 10:40 a.m.)

13     **THE COURT:** I made rulings yesterday on what portions
14 of his testimony was admissible or not. I do not have a copy
15 of the transcript. I do not recall what I said. It's up to
16 the two of you to ensure that the operator knows which portions
17 to play and which portions not to play. That's your
18 responsibility, not the Court's.

19     **MR. ERNST:** I agree, Your Honor. We have highlighted
20 portions that are supposed to be out, and he keeps playing
21 them. That's the problem.

22     **THE COURT:** I don't know anything about it. Take a
23 look at the transcript he's using, and I'll be back in
24 ten minutes. It's your responsibility.

25   (Recess from 10:44 a.m. to 10:52 a.m.)

*13-13308; Jennings v. Fuller, et al.*

*Kirk Stucky, Psy.D. - Video*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 7

1  **MR. ERNST:** Judge, the plaintiffs want a ruling about
2  all of that stuff about the bar fight was supposed to be X'ed
3  out.
4  **THE COURT:** Mr. Ernst, the Court has given its
5  rulings on what portions were admissible and inadmissible, and
6  I would assume that the operator has a script that you have and
7  that the defendant has that shows the parts that are
8  admissible.
9  **MR. ERNST:** We do and he played them anyway, and so
10  what I'm asking is that the Court instruct the jury, some type
11  of cautionary instruction that there is no bar fight, it's this
12  phantom thing, and now it's been injected into the record.
13  There was no bar fight, but now they have heard this, oh, there
14  is a possible bar fight that caused his injuries.
15  **THE COURT:** What precisely do you want me to do?
16  **MR. ERNST:** I would like you to give a cautionary
17  instruction that says you heard a reference to a fight.  There
18  was no bar fight in this --
19  **THE COURT:** All right.  I will deal with it in that
20  fashion.
21  **MR. REISING:** I'm sorry, Your Honor, you are going to
22  do what now?
23  **THE COURT:** I'm going to instruct the jury that they
24  may have heard testimony about a bar fight in some fashion.
25  Disregard any testimony that you heard about a bar fight.

*13-13308; Jennings v. Fuller, et al.*

*Kirk Stucky, Psy.D. - Video*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 8

1    That's all I can do.  I can't put a yolk back into a
2 broken egg.
3        **MR. ERNST:**  But can you go further and say there was
4 no bar fight in this instance?
5        **THE COURT:**  I will just tell them to disregard it.
6 Okay?  Can I call the jury back?
7    I am calling the jury back.  I'm not waiting for you guys
8 to tell me what I'm supposed to do.
9    Come on in, folks.
10    (Jury in at 10:54 a.m.)
11        **THE COURT:**  Be seated.
12    On occasion in the taking of a deposition the witness or
13 the lawyers -- I guess the best way I can put it, the simplest
14 way is a trolley, you know what a trolley is?  That's that arm
15 that goes over the electric wire.  Sometimes it gets off the
16 trolley.
17    Okay.  After the deposition is typed, they go back through
18 it and occasionally there are matters reflected in the
19 deposition that the Court rules are inadmissible that the jury
20 is to disregard.  They then mark up that transcript and give it
21 to the operator.  That's why he has a little button and he
22 turns on and off the sound.
23    Occasionally in the course of playing the deposition they
24 get off the trolley.  You heard something about a bar fight.
25 There is no bar fight involved in this case.  Disregard

*Thomas Byrd, M.D. - Video*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 9

1  anything you heard that has anything to do with a bar fight.
2       Okay?  And let's hope that the trolley stays on the wire
3  for the rest of the morning.  Thank you.
4       Go ahead, sir.
5       (Videotaped deposition continued, then concluded.)
6            **THE COURT:**  Do you have another witness?
7            **MR. REISING:**  We have one last witness, Your Honor.
8            **THE COURT:**  Thank you.  Call the witness.
9            **MR. REISING:**  It's Dr. Byrd, B-y-r-d.
10           **THE COURT:**  Thomas Byrd?
11           **MR. REISING:**  Yes, Your Honor.
12           **THE COURT:**  Go ahead.
13      Does anyone feel a need for a recess?
14      Okay.  We'll take a short recess.
15      (Jury out at 11:47 a.m.)
16           **THE COURT:**  How long is this deposition?
17           **THE VIDEOGRAPHER:**  37 minutes, Your Honor.
18           **THE COURT:**  Thank you.
19      (Recess from 11:47 a.m. to 11:57 a.m.)
20           **THE COURT:**  Okay.  Come in, folks.
21      (Jury in at 11:57 a.m.)
22           **THE COURT:**  Be seated.  Continue.
23          **MR. REISING:**  Thank you, Your Honor.  We're going to
24  show the deposition by video of Dr. Byrd.
25      (Videotaped deposition testimony of Thomas Byrd, M.D.

*13-13308; Jennings v. Fuller, et al.*

*William Jennings - Rebuttal Direct*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 10

1   played back for the jury.)
2   **THE COURT:** Thank you.  Do you have another witness?
3   **MR. REISING:** We do not, Your Honor.  The defense
4   rests.
5   **THE COURT:** Thank you.  Do you have any rebuttal?
6   **MR. ERNST:** Just one subject with Mr. Jennings real
7   quickly, Your Honor.
8   **THE COURT:** Go ahead.
9                        - - -
10                                              (12:35 p.m.)
11                     **DIRECT EXAMINATION**
12  **BY MR. ERNST:**
13  **Q.** Mr. Jennings, you saw the psychologist named Dr. Stucky,
14  correct?
15  **A.** Correct.
16  **Q.** And you made a recording of your interview with him,
17  correct?
18  **A.** Yes, I did.
19  **Q.** Okay.  And did -- you heard Dr. Stucky tell this jury that
20  you told him that you were not currently having nightmares,
21  correct?
22  **A.** I did.
23  **Q.** That's a false statement, isn't it?
24  **A.** Yes, it is.
25  **MR. REISING:** Your Honor, leading and suggestive,

*13-13308; Jennings v. Fuller, et al.*

*William Jennings - Rebuttal Cross*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 11

1 first of all.
2      **THE COURT:** That's leading.  The question is, is that
3 true or not?
4 **BY MR. ERNST:**
5 **Q.** Is that a true statement or not?
6 **A.** It is not.
7 **Q.** Okay.  And you gave us a copy of the recording you made,
8 correct?
9 **A.** I did.
10 **Q.** Okay.  I'm going to ask if this is your voice on it and
11 Dr. Stucky's voice.
12      **MR. ERNST:** I'm sorry, Your Honor.  I know this is
13 going to be the trial with technical difficulties.
14    (Audio file played.)
15 **BY MR. ERNST:**
16 **Q.** Was that your voice and Dr. Stucky during the Dr. Stucky
17 interview?
18 **A.** Yes, it was.
19      **MR. ERNST:** Thank you.  That's all I have.
20      **THE COURT:** Cross-exam.
21      - - -
22      (12:39 p.m.)
23      **CROSS-EXAMINATION**
24 **BY MR. REISING:**
25 **Q.** Mr. Jennings, am I to understand that you recorded the

*13-13308; Jennings v. Fuller, et al.*

*William Jennings - Rebuttal Cross*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 12

1  entire interview with Dr. Stucky?
2  **A.** I did.
3  **Q.** Including all of the testing you took?
4  **A.** I didn't see it necessary for the testing.
5  **Q.** You just taped the interview with Dr. Stucky?
6  **A.** That's correct.
7  **Q.** Was there a reason for that?
8  **A.** Yes, there was.
9  **Q.** What was the reason?
10 **A.** It seems to be a lot of dishonesty going on.
11 **Q.** A lot of dishonesty going on.
12 **A.** That's correct.
13 **Q.** Did you tell Dr. Stucky you were going to record the
14 interview?
15 **A.** I did not.
16 **Q.** Did you record the complete interview from start to
17 finish?
18 **A.** Yes, I did.
19 **Q.** The part that was just played, what was that portion?
20 **A.** That was where he asked me if I had nightmares still.
21 **Q.** So if we were to listen to the complete tape, we would
22 hear everything that was said during the interview?
23 **A.** That's correct.
24 **Q.** There was a lot of background noise.
25 **A.** It was in my pocket.

*13-13308; Jennings v. Fuller, et al.*

*William Jennings - Rebuttal Cross*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 13

1  **Q.** It was in your pocket. And at no time did you tell
2  Dr. Stucky you were doing that?
3  **A.** No, I did not.
4      **THE COURT:** Asked and answered.
5      Go ahead.
6  **BY MR. ERNST:**
7  **Q.** Did you do it at the request of your attorney?
8  **A.** No, I did not.
9  **Q.** You just did it on your own?
10 **A.** I did.
11 **Q.** Did you record any other of the interviews, for instance,
12 with the doctor you saw in Birmingham?
13 **A.** No, I didn't.
14 **Q.** So Dr. Stucky is the only one you recorded?
15 **A.** That is correct.
16 **Q.** And is there a particular reason why you recorded his as
17 opposed to anybody else you saw?
18 **A.** The only one that I seen that was going to be an in-depth
19 interview.
20 **Q.** And you knew it was going to be an in-depth interview?
21 **A.** Not initially.
22 **Q.** Did you know that you were going to be asked questions
23 about issues concerning your psychological well-being?
24 **A.** Not at first.
25 **Q.** What did you think the interview was going to be?

*13-13308; Jennings v. Fuller, et al.*

*William Jennings - Rebuttal Cross*
*Tuesday/November 1, 2016/Vol. 10*

V10-Page 14

1  **A.** At first I thought it was more physical.
2  **Q.** More physical, meaning he was going to do a physical
3  examination of you?
4  **A.** Yes.
5  **Q.** Did you look at the door to his office and see where it
6  indicates neuropsychology on the door?
7  **A.** I was running late so I didn't look at the door, no.
8  **Q.** How long did that interview last; do you have any
9  recollection?
10 **A.** A little over an hour.
11 **Q.** Have you played that interview at all other than what we
12 heard here today?
13 **A.** Yes, I have.
14 **Q.** Who have you played it for?
15 **A.** Myself.
16 **Q.** Yourself?
17 **A.** Yes.
18 **Q.** Never played it for your attorney?
19 **A.** Parts of it.
20 **Q.** What were you going to do with that interview, the taped
21 interview?
22 **A.** I was holding it in case something like this, where there
23 was an inconsistency with his statement regarding the incident.
24 **Q.** You thought he was going to lie so you thought you would
25 have a recording; is that the idea?

*13-13308; Jennings v. Fuller, et al.*

V10-Page 15

1  **A.**   There's been a lot of that going on.
2  **Q.**   A lot of that going on?
3  **A.**   Yes, sir.
4  **Q.**   Okay. So you are telling me you think a lot of people are
5  lying during the course of this trial?
6  **A.**   I do.
7  **Q.**   But not you?
8  **A.**   That's correct.
9          **THE COURT:** That's argumentative, sir, the way it's
10 phrased.
11         **MR. REISING:** I have nothing further, Your Honor.
12         **THE COURT:** Thank you.
13      You are excused.
14      Do you have any further evidence?
15         **MR. ERNST:** Just with respect to some housekeeping to
16 move some medical records in. Other than that, no.
17         **THE COURT:** There's no need to keep the jury?
18         **MR. ERNST:** No.
19         **THE COURT:** Thank you.
20      We'll see you tomorrow morning at 9:00 o'clock. Keep your
21 mouths closed, your ears plugged, your eyes open, et cetera.
22      (Jury out at 12:43 p.m.)
23         **THE COURT:** Any matters for the Court before we
24 recess?
25         **MR. REISING:** Your Honor, I would like to obtain a

*13-13308; Jennings v. Fuller, et al.*

V10-Page 16

1  complete copy of the recording of the interview that was just
2  referenced by Mr. Jennings.
3              **THE COURT:** You will give him a copy?
4              **MR. ERNST:** No problem.
5       This is my motion regarding the unlawful prosecution -- or
6  my response.
7              **THE COURT:** Okay. I will read this overnight. Have
8  you given --
9              **MR. ERNST:** Yeah, I gave him one.
10             **THE COURT:** All right. I'll read it overnight.
11 Thank you.
12             **MR. ERNST:** Thank you, Your Honor.
13             **THE COURT:** We're in recess until 9:00 o'clock
14 tomorrow morning.
15             **MR. ERNST:** I thought we were meeting a couple
16 minutes early.
17             **THE COURT:** What?
18             **MR. ERNST:** I thought we were meeting a couple
19 minutes early.
20             **THE COURT:** No.
21             **MR. REISING:** So 9:00 o'clock?
22             **THE COURT:** 9:00 o'clock, at which time I will expect
23 you to give me a list of the witnesses who testified numbered,
24 no caption, just witnesses who testified from the plaintiff and
25 from the defendant.

*13-13308; Jennings v. Fuller, et al.*

1    Number two, I will expect a list of the exhibits admitted,
2  no caption, just exhibit list and a copy of each of the
3  exhibits.
4    Now, with regard to the disks, there's two ways. Either
5  you can give them a device in there, a laptop, assuming one of
6  them knows how to manipulate it, or if they want to see the
7  exhibits, they can send me a note and we'll play them here in
8  open court.
9         **MR. REISING:** Correct. That's fine, Your Honor. I
10 think that's --
11        **THE COURT:** I think that's the best thing to do.
12        **MR. REISING:** I do, too.
13        **THE COURT:** If they want the exhibits, they will send
14 me a note and we'll play the exhibit or the portion of it they
15 want in open court.
16        **MR. REISING:** You are talking about the video disks?
17        **THE COURT:** What?
18        **MR. REISING:** You are talking about the video disks?
19        **THE COURT:** Yeah, the videos.
20        **MR. REISING:** Okay.
21        **THE COURT:** Now, is there any question about anything
22 I have said or anything I have said is not fully understood?
23        **MR. ERNST:** It's fully understood, Your Honor, by the
24 plaintiff.
25        **MR. REISING:** I understand also, Your Honor, on

*13-13308; Jennings v. Fuller, et al.*

V10-Page 18

1  behalf of the defendants.
2        One further issue.  You asked earlier for a timeline of
3  the events at the jail.
4        **THE COURT:** I think that was in connection with the
5  JMOL.  I don't want one now.  It's up to you how you deal with
6  it.  I have no need.
7        **MR. REISING:** I'm just bringing it up to the Court,
8  that's all.
9        **THE COURT:** No.  I anticipated a more complex JMOL,
10 and in light of the record now, I don't need anything like
11 that.
12       **MR. REISING:** Okay, Your Honor.  Thank you.
13       **THE COURT:** I will tell you, I didn't notice that the
14 exhibit at the time I asked you was posted on the cell door.
15 There's an exhibit, the log on the door?
16       **MR. ERNST:** The log, yeah.
17       **MR. REISING:** Right, the log.
18       **THE COURT:** Yeah.
19       **MR. REISING:** That's an exhibit.
20       **THE COURT:** Yeah, that's an exhibit.
21       **MR. REISING:** Correct.
22       **THE COURT:** Yeah, but at the time I made that request
23 I didn't recall it.
24       Okay.  Thank you.
25       **MR. ERNST:** Thank you.

*13-13308; Jennings v. Fuller, et al.*

1        **THE COURT:** We're in recess.

2        (Proceedings adjourned at 12:47 p.m.)

3                          -  -  -

4

5                     **C E R T I F I C A T I O N**

6        I certify that the foregoing is a correct transcription of

7   the record of proceedings in the above-entitled matter.

8

9   s/ Sheri K. Ward_____                        11/17/2016
    Sheri K. Ward                                  Date
10  Official Court Reporter

11                         -  -  -